W. R. CASE & SONS CUTLERY CO. v. CANODE. (No. 1371.)

(Court of Civil Appeals of Texas. Amarillo. June 12, 1918.)

1. INNKEEPERS ⊜➡11(3) — LIABILITY AS BAILEE.

An innkeeper is under duty to exercise extraordinary care to prevent the loss of property committed to his custody by a guest.

2. INNKEEPERS ⊜➡11(12) — LIABILITY AS BAILEE—EXERCISE OF CARE—SUFFICIENCY OF EVIDENCE.

In action against innkeeper for loss of traveling salesman's grip containing manicure sets, evidence *held* not to show an extreme degree of care in protecting the grip.

3. INNKEEPERS ⊜➡11(12) — LIABILITY OF BAILEE—QUESTIONS OF FACT.

In suit against innkeeper for loss of traveling salesman's grip, where it appeared that when thief was arrested part of goods were recovered, but district attorney kept them to use in evidence, whether innkeeper was liable for loss of worth of goods recovered, or whether they were recovered within a reasonable time, and his liability was simply for delay in delivering them, were questions of fact.

4. INNKEEPERS ⊜➡11(3) — LIABILITY AS BAILEE—INSURER.

An innkeeper is not an insurer of the safety of his guest's property intrusted to him, though under duty to exercise extreme care.

5. INNKEEPERS ⊜➡11(12) — LIABILITY AS BAILEE — PRIMA FACIE CASE — BURDEN OF PROOF.

In suit against innkeeper for loss of salesman's grip, proof of delivery and failure to redeliver on demand entitled plaintiff prima facie to recover, and, if innkeeper desired to avoid liability by showing his extreme care, he had burden to allege and prove it.

6. PLEADING ⊜➡378—GENERAL DENIAL—EFFECT.

A general denial only put plaintiff on proof of the allegation of his petition in order to make a prima facie case.

7. TRIAL ⊜➡352(4) — SUBMISSION OF ISSUE — PLEADINGS.

The trial judge should not submit an issue not raised by the pleadings.

8. COURTS ⊜➡122 — JURISDICTIONAL AMOUNT.

The amount of plaintiff's demand at the time of filing suit fixes the jurisdiction of the court, in the absence of fraudulent intent in making the allegation.

9. INNKEEPERS ⊜➡11(12) — LIABILITY AS BAILEE—DAMAGES.

In action against innkeeper from whose custody salesman's grip was stolen, plaintiff company owning grip was entitled to recover full market value of the article and its contents unless returned.

10. INNKEEPERS ⊜➡11(12)—ACTION AGAINST—LIABILITY.

In action against innkeeper for loss of traveling salesman's grip from his custody, letter of district attorney notifying plaintiff company owning grip that goods recovered from thief were ready to be redelivered, was admissible on issue of delay in delivery, and to show extent of liability.

Appeal from Potter County Court; T. W. McBride, Judge.

Action by the W. R. Case & Sons Cutlery Company against H. P. Canode. From judgment for defendant, plaintiff appeals. Reversed, and cause remanded.

Kimbrough, Underwood & Jackson and D. I. Hutchinson, all of Amarillo, for appellant. Veale & Lumpkin, of Amarillo, for appellee.

HALL, J. Appellee is an innkeeper in Amarillo. One R. A. Chitwood, drumming for appellant company, registered at appellee's hotel about the 28th day of May, 1917, and checked his grip, containing manicure sets of the value of $252.25. His grip was checked on Saturday, and on the following Monday, when called for, it was not found. Subsequent developments showed that it had been stolen by a negro boy who had occasionally worked at the hotel, but who was not em-

─────────────

⊜➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ployed in or about the building at the time of the theft. Appellee's answer contains several defenses unnecessary to be stated here.

[1, 2] The first assignment is based upon the refusal of the court to direct a verdict in appellant's favor. In the case of Howth v. Franklin, 20 Tex. 798, 73 Am. Dec. 218, Judge Roberts states the liability of innkeepers for the loss of property of their guests in the following language:

"He is liable for any loss of property committed to his keeping, which any care or vigilance or diligence on his part could have prevented. * * * The diligence used was ordinary, but not extreme; and therefore, if he were an innkeeper, he was liable. When property committed to the custody of an innkeeper by his guest is lost, the presumption is that the innkeeper is liable for it, and he can relieve himself from that liability by showing that he has used extreme diligence. What facts will excuse him is a question perhaps not very well settled; but it is well settled that he cannot excuse himself without showing that he has used extreme care and diligence in relation to the property lost."

In the subsequent case of Hadley v. Upshaw, 27 Tex. 547, 86 Am. Dec. 654, Bell, J., approves a charge which states the liability of innkeepers in the following language:

"Landlords of public hotels for transient boarders or travelers are held to strict liability for all losses of such ordinary articles of personal property or money as are carried about the persons of travelers and which are lost in the tavern. They are held liable for the value of such articles lost or stolen at the tavern unless it is made to appear that the loss did not result from any want of care or neglect, or any insufficiency of means for protection, on the part of the defendant or his servants."

It is stated in 14 R. C. L. p. 516, § 19:

"It is also quite generally agreed that for all thefts from within or unexplainable, whether committed by guests, servants, or strangers, the innkeeper is answerable; and while some courts repudiate the general rule that he is an insurer of the safety of goods brought by guest, yet in the case of loss by theft they refuse to exonerate him, although it is an unavoidable accident, not due to any fault or negligence of his."

Appellee testified that he had been in the hotel business about 16 years. He described the arrangement of the ground floor of his hotel, showing that the baggage room was north of the clerk's counter; that the regular checkroom was separate from the office and across a narrow hall. He stated, however, that the check room was easily accessible from the office. On direct examination he stated:

"We use every precaution possible to take the very best care of it. The check room is so situated with reference to my office that I can practically see what is going on over there. It is right within a very short distance of it."

On cross-examination he stated he had no personal knowledge of the deposit of the grip in question except what Chitwood told him; that the grip was checked in the regular way, and from the time he went into the check room it received just the care received by every one's baggage; that the transaction was in no way different from such transactions on other occasions; that he had no personal knowledge of the door being left open. He further stated that he had been in the hotel business for sixteen years, and could not recall another instance where he had been sued for the loss of a grip. This evidence falls short of showing an extreme degree of care in protecting the grip in question. The fact that it was stolen by a negro, who was not an employé in the hotel, and had no right to be there, and the further fact that he must have entered the baggage room through an open door, when appellee testified that this door could have been seen from the clerk's desk, shows a want of even ordinary care. It negatives the idea that any watch was kept over the baggage room, and, in our opinion, is wholly insufficient to relieve appellee of liability.

[3] The court, however, should not have given the peremptory instruction requested by appellant, for the reason that the record discloses the fact that part of the goods, to the value of $115, were recovered when the thief was arrested within a few days after the theft. It appears that upon the arrest of the thief the district attorney took the grip with the remaining manicure sets in his possession and held them to be used as evidence in the trial of the thief; that this trial resulted in the conviction of the negro about the last day of October, at which time it appears that appellant might have again obtained possession of the remainder of the goods without any controversy. "A mere delay in delivery does not amount to conversion where it was not willful, nor under such a circumstance as to amount to a denial of ownership or right of possession." 6 C. J. p. 1143, § 97. "Where the time of redelivery is not fixed by agreement or by the nature of the object to be accomplished, redelivery must be made within a reasonable time after demand; the question of what time is reasonable being determined by the circumstances of each particular case." Id. "If a time for the return of the property is not fixed by agreement or by the nature of the object to be accomplished, the bailee must, after a reasonable time, redeliver it whenever he is called upon to do so." R. C. L. p. 114, § 37. It then became a question of fact whether, under all the circumstances, appellee was liable for the loss of the $115 worth of goods recovered, or whether they were recovered within a reasonable time and his liability was simply for delay in redelivering them. What is here said also disposes of the second assignment.

[4] According to the rule as stated in Howth v. Franklin, supra, an innkeeper is not an insurer of his guest's property, and the court did not err in refusing special charge No. 3.

[5-10] Appellant alleged the delivery of the grip and its contents to appellee, and a failure to redeliver upon demand. There is no allegation of negligence in the petition, but the right to recover is based upon the liability of an innkeeper as stated above.

Proof of these facts entitled appellant prima facie to recover, and a general denial only put appellant upon proof of its allegation. If appellee desired to avoid liability by showing that he had used extreme care, it was incumbent upon him to allege and prove that fact. Such proof was not admissible under the pleadings, and we think the court erred in submitting that issue to the jury, although evidence upon it was admitted without objection. The charge should not submit an issue not raised by the pleadings. We agree' with appellant in the contention that the burden of proof to show extreme care and diligence was upon appellee. The evidence shows that appellant was engaged in interstate commerce, and the charge with reference to appellant's being engaged in interstate commerce should not have been given. The amount of plaintiff's demand at the time of filing suit fixes the jurisdiction of the court, and upon the face of the petition appellant was entitled to recover at that time the full market value of the grip and its contents. No fraudulent intent was shown in making the allegation. We think the letter of the district attorney notifying appellant that the goods were ready to be redelivered was admissible upon the issue of delay in delivery and to show the extent of appellee's liability.

The judgment is reversed and the cause remanded.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes